IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| FREDRIC TRAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:20-05071-CV-RK |
| ) | |
| SONNY PERDUE, SECRETARY; AND ) | |
| DEPARTMENT OF AGRICULTURE, ) | |
| OFFICE OF ADJUDICATION; ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Defendants Sonny Perdue and the United States Department of Agriculture, Office of Adjudication's ("Defendants") motion to dismiss for failure to state a claim. (Doc. 7.) The motion is fully briefed. (Docs. 7, 14, and 17.) After careful consideration, the motion is **GRANTED,** and the case is **DISMISSED**.

### Background[1]

Plaintiff is an African American male and a Jehovah's Witness who worked for the United States Department of Agriculture's Food Safety and Inspection Service ("FSIS") as a Food Inspector from November 2013 to at least July 2018. There are two Equal Employment Opportunity ("EEO") complaints mentioned in and attached to the Complaint.[2]

### I. Complaint FSIS-2017-00821

The first EEO complaint mentioned is FSIS-2017-00821.[3] On March 10, 2017, FSIS denied Plaintiff's request for medical leave under the Family and Medical Leave Act of 1993

---

[1] The Background facts are taken from the Complaint (Doc. 3) and the briefing. However, to any extent facts are taken from the brief, such facts are deduced from the Complaint. Upon review of the briefing, Defendant's position is found to be persuasive. Portions of Defendants' briefing are adopted without further citation.

[2] Plaintiff mentions a third EEO Complaint in his response. (Doc. 14.) The Court analyzes that EEO Complaint below.

[3] The Court can consider the administrative record related to Plaintiff's EEO activity without converting this motion to dismiss into a motion for summary judgment for four reasons. First, Plaintiff's EEO complaints and subsequent proceedings are public records. *Raines v. Potter*, No. 4:05-CV-930 CEJ, 2006 WL 1134700, at *2 (E.D. Mo. Apr. 25, 2006) ("The EEO complaint is a matter of public record that a court may consider in the context of a motion to dismiss.") (citing *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003)). Second, Plaintiff's EEO activity does not contradict his Complaint. *Noble Sys.*

("FMLA") because Plaintiff did not submit medical records with his request. About two months later, Plaintiff provided supporting medical records to FSIS, and FSIS approved his request for medical leave. On April 20, 2017, Plaintiff's first-line supervisor questioned a doctor's note placing Plaintiff on medication, but Plaintiff's first-line supervisor later accepted the doctor's note. (*Id.* at pp. 23, 28, 37). Three months later, on July 27, 2017, Plaintiff's first-line supervisor questioned Plaintiff's request for "sick leave" but later approved the request. (*Id.* at pp. 24, 28, 37).

Plaintiff contacted an EEO counselor on August 11, 2017, alleging discrimination based on race, disability, and in retaliation for Plaintiff engaging in protected activity on March 31, 2017. On October 4, 2017, Plaintiff's first or second-line supervisor denied Plaintiff's request for medical leave to cover for Plaintiff being ten minutes late to work. Plaintiff had called into work before his start time to request medical leave under FMLA because he had depleted his annual leave. Later that month, on October 30, 2017, Plaintiff's first-line supervisor issued Plaintiff a "Fully Successful" rating on his annual performance review. Either that same day or the next day, on October 30, 2017, or October 31, 2017, Plaintiff's first-line supervisor yelled at Plaintiff for submitting a request for medical leave under FMLA.

A couple days later, on November 2, 2017, Plaintiff's first-line supervisor again threatened to deny Plaintiff's request for medical leave unless Plaintiff provided thirty days' notice. That same day, FSIS allegedly charged Plaintiff with being absent without leave ("AWOL") instead of granting him leave without pay ("LWOP") for work hours missed for an unknown reason. However, Plaintiff did not substantiate his claim of being charged AWOL with evidence of a request for LWOP or other type of leave or record of being charged AWOL in the EEO investigation, and an FSIS witness indicated no request for LWOP was received for the day in question.

## II. Complaint No. FSIS-2018-00778

On April 28, 2018, Plaintiff's first-line supervisor denied Plaintiff's request for annual

---

*Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (stating that, "[w]hen ruling on a motion to dismiss under Rules 12(b)(6) or 12(c)," a district court may consider "materials that do not contradict the complaint" without converting the motion to dismiss into a summary judgment motion). Third, Plaintiff's EEO activity is "necessarily embraced" by his Complaint, because two final agency decisions are attached to and referenced by his Complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (internal quotation marks and citation omitted). Fourth, and finally, the Court may consider Plaintiff's EEO activity as part of the "public and administrative record" referenced in his Complaint. *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1102 (8th Cir. 2000) (citations omitted).

2

Case 3:20-cv-05071-RK   Document 19   Filed 02/01/21   Page 2 of 14

leave to attend a family event on May 11, 2018, due to insufficient staffing coverage. On May 11, 2018, Plaintiff notified FSIS before his start time that he would not be reporting to work even though he did not receive leave. That day, Plaintiff's facility was short staffed, and Plaintiff was charged AWOL.

On May 23, 2018, FSIS issued Plaintiff a notice of proposed suspension for fourteen days based on Plaintiff being AWOL on both February 1, 2018,[4] and May 11, 2018. FSIS mitigated the proposed suspension to seven days, though, because FSIS reversed the AWOL charge for Plaintiff's absence on February 1, 2018.

On June 28, 2018, Plaintiff's first-line supervisor denied Plaintiff's request for annual leave to attend a religious event the next day, on June 29, 2018, due to insufficient staffing coverage. On June 29, 2018, Plaintiff notified FSIS before his start time that he would not be reporting to work even though he did not receive leave. Plaintiff was later charged AWOL for this absence.

Plaintiff contacted an EEO counselor on July 6, 2018, alleging discrimination based on religion and in retaliation for Plaintiff engaging in protected EEO activity[5] around October 2016.

On July 17, 2018, Plaintiff informed his first-line supervisor that he was going to have surgery soon, and he was going to request medical leave under FMLA. Plaintiff later requested medical leave, but FSIS initially denied his request on July 24, 2018, due to insufficient documentation and insufficient notice. However, on July 31, 2018, after discussing the situation with Plaintiff and Plaintiff's supervisors, FSIS approved Plaintiff's request for medical leave.

## III. Subsequent Procedural History

Defendants issued a final agency decision on FSIS-2017-00821 on July 29, 2019, finding that the "weight of the evidence indicates that discrimination did not occur with respect to the issues in this complaint." Defendants issued a final agency decision on FSIS-2018-00778 on July 19, 2019, finding the same.

Plaintiff filed this lawsuit on August 18, 2020. In his Complaint, Plaintiff alleges that Defendants discriminated against him under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Notification and Federal Employee Antidiscrimination and Retaliation Act of 2002 ("No FEAR Act") based on his race, color, religion, and disability.

---

[4] The documentation attached to Plaintiff's complaint indicates that he was charged 5.5 hours of AWOL when he called in sick and had insufficient leave to cover the workday and later did not submit medical documentation to support his request for LWOP for the 5.5 hours.

[5] No further detail or evidence appears in the record as to this alleged activity.

3

Plaintiff alleges that the discriminatory conduct includes: (1) ending his employment, (2) failing to promote him, (3) subjecting him to unequal terms and conditions in his employment, (4) retaliation, (5) harassment and hostile work environment, and (6) "[d]egredation of name and character." In support of his claims, Plaintiff alleges the following:

- "Disciplined due to injury – was told [I] was being disciplined and wrote up for getting injured."
- "Harassed and reprisal – was harassed by management for filing EEO complaint."
- "Denial of Union – was denied Union representation while being harassed by management."
- "Denial of promotion – was denied several promotions after I filed my first EEO complaint."
- "Discrimination – was disciplined or denied my employee rights by management but coworkers of different race was allowed to exercise their rights or not disciplined for the same thing."
- "Was questioned about my Whistleblower complaint."
- "Was denied time off to go to work comp appointment by management."
- "Was forced to resign due to discrimination, reprisal, and harassment by Agency."
- "Unfair or biased EEO investigations – didn't interview all my witnesses or was one sided."

Plaintiff requests relief for these alleged discriminatory acts, and he attached the two administrative charges at issue to his Complaint: FSIS-2017-00821 and FSIS-2018-00778.

## Legal Standard

Federal pleading rules provide that a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8's pleading standard must be read in conjunction with Rule 12(b)(6), which tests a pleading's legal sufficiency. To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is facially plausible where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Ark. Dept. of Human Serv.*, 850 F.3d 368, 371 (8th Cir.

2017) (internal quotation marks and citation omitted). While a complaint does not need to include detailed factual allegations, the complaint must allege more than a sheer possibility that a defendant acted unlawfully to survive a motion to dismiss. *Id.* at 371 (citation omitted). When considering a motion to dismiss for failure to state a claim, the well-pled allegations in the complaint must be accepted as true and construed in the light most favorable to the non-moving party. *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996).

## Discussion

Defendants make several arguments for dismissal. The Court will address each in turn.

### I. "Office of Adjudication" is Not a Proper Defendant

Defendants argue, and Plaintiff concedes, the "Office of Adjudication" is not a proper Defendant in this action. Under federal law, the "only proper defendant in an employment discrimination action by a government employee is the head of the department, agency or unit." *Barhorst v. Marsh*, 765 F. Supp. 995, 999 (E.D. Mo. 1991) (citing 42 U.S.C. § 2000e-16(c)); *Warren v. Dep't of Army*, 867 F.2d 1156, 1158 (8th Cir. 1989)). Therefore, the motion to dismiss the "Office of Adjudication" is granted.

### II. The No FEAR Act Does Not Provide a Private Cause of Action

Next, Defendants argue that any claims based on the No FEAR Act must also be dismissed because the Act does not provide a private right of action. Defendants are correct. The No FEAR Act "does not create a substantive right for which the government must pay damages." *Glaude v. United States*, 248 Fed. App'x 175, 177 (Fed. Cir. 2007); *see also Williams v. Spencer*, 883 F. Supp. 2d 165, 182 (D.D.C. 2012) (stating that the No FEAR Act "does not provide a private cause of action"). Instead, the No FEAR Act requires federal agencies to pay discrimination damages out of their own funds "rather than the General Fund of the Treasury." *Glaude*, 248 Fed. App'x at 177. Thus, to any extent Plaintiff pleads claims arising under the No FEAR Act, those claims are dismissed.

### III. Plaintiff's Claims Fail to the Extent Plaintiff Did Not Initiate Equal Employment Opportunity ("EEO") Counseling Within Forty-Five Days of the Alleged Conduct

Before filing an employment discrimination claim in federal court, a federal employee must fully exhaust his administrative remedies. *Burkett v. Glickman*, 327 F.3d 658, 660 (8th Cir. 2003). The first step toward exhaustion is initiating contact with an EEO counselor within forty-five days of the alleged discriminatory conduct. *Id.* (citing 29 C.F.R. § 1614.105(a)(1)). "If the matter

5

cannot be resolved informally with the help of the counselor," then the federal employee may "file a formal EEO complaint with the agency." *Id.* (citing 29 C.F.R. § 1614.106). Discrete discriminatory acts, like termination, the failure to promote, or the denial of transfer, are "completed acts at the time that they occur" and are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002)) (internal quotation marks omitted).

In FSIS-2017-00821, Plaintiff alleges that FSIS discriminated against him by (among other things) (1) denying his request for medical leave on March 10, 2017, (2) and questioning the validity of his doctor's note on April 20, 2017. Plaintiff failed to exhaust his administrative remedies for these claims, though, because they occurred more than forty-five days before he contacted an EEO counselor on August 11, 2017. Likewise, in FSIS-2018-00778, Plaintiff alleges that FSIS discriminated against him by (among other things) denying his request for annual leave on May 11, 2018. Plaintiff failed to exhaust his administrative remedies for this claim too because it occurred more than forty-five days before he contacted an EEO counselor on July 6, 2018.

To the extent any of the claims in Plaintiff's Complaint rely on these time-barred acts, they are dismissed. Furthermore, to the extent any of these acts may be liberally construed as part of the same unlawful employment practice as one occurring within the 45-day time periods corresponding to either FSIS-2017-00821 or FSIS-2018-00778, these claims are addressed in other sections of this analysis (i.e. section VII, they are based on non-adverse employment actions; and section VI, no causal connection drawn between protected status/activities and alleged conduct).

**IV.** **Plaintiff's Claims Fail to the Extent They are Outside the Scope of the Administrative Charges Attached to Plaintiff's Complaint**

When a federal employee files an employment discrimination claim in federal court, his "[a]dministrative remedies are deemed exhausted as to all incidents of discrimination that are like or reasonably related to the allegations of the administrative charge." *Young v. Time Warner Cable Capital, L.P.*, 443 F. Supp. 2d 1109, 1122-23 (W.D. Mo. 2006) (quoting *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir. 1994)) (internal quotation marks omitted). A federal employee does not exhaust his administrative remedies for allegations outside the scope of the administrative charge, though, because to do so would "circumscribe the agency's investigatory and conciliatory role" in resolving employment discrimination claims. *Id.* (citing *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 223 (8th Cir. 1994)).

6

In his administrative charges, Plaintiff claims that FSIS discriminated against him by: (1) denying leave four times, (2) threatening to deny leave two times, (3) questioning the validity of his requests for leave two times, (4) questioning the validity of his medical records one time, (5) issuing him a lower rating on an annual performance appraisal on October 30, 2017, (6) supposedly charging him AWOL on November 2, 2017, and (7) proposing to suspend him for fourteen days.[6]

However, in his Complaint, Plaintiff claims (among other things) that FSIS discriminated against him by: (1) ending his employment, (2) degrading his name and character, (3) denying him union representation, (4) questioning him about a "[w]histleblower" complaint, (5) denying him leave to attend a worker's compensation appointment, and (6) forcing him to resign. None of these claims is like or related to the claims in the administrative charges at issue. Thus, these claims are dismissed due to Plaintiff's failure to exhaust his administrative remedies.

## V. Plaintiff's Disability-Related Claims Fail Because a Torn Hamstring is a Temporary Injury, not a Substantially Limiting Disability

Plaintiff alleges that FSIS discriminated against him based on a disability described as a torn hamstring. However, Plaintiff did not base the claims in his Complaint on the Americans with Disabilities Act of 1990 ("ADA") or the Rehabilitation Act of 1973 ("Rehabilitation Act"). Regardless, even if he had, a torn hamstring is not a qualifying disability. "Statutory disability requires permanent or long-term limitations." *Heintzelman v. Runyon*, 120 F.3d 143, 145 (8th Cir. 1997) (citing 29 C.F.R. app. § 1630.2(j)). Plaintiff must further prove he is "unable to perform either a class of jobs or a broad range of jobs in various classes." *Id.* (citing 29 C.F.R. § 1630.2(j)(3)(i)) (internal quotations omitted). *Id.*

Here, the pleadings and evidence show that Plaintiff returned to work shortly after he tore his hamstring. (Doc. 14, pp. 7-8, 12); *McNeil v. Metro*, 748 F. Supp. 2d 1047, 1055-56 (E.D. Mo. 2010) (finding that the plaintiff's back injury was not a disability under the ADA where he "returned to work four months after his initial injury and six weeks after his reinjury"); *see also Samuels v. Kan. City Mo. Sch. Dist.*, 437 F.3d 797, 802 (8th Cir. 2006) ("[T]emporary impairments

---

[6] Plaintiff refers to another administrative charge, FSIS-2017-00264, in his response. This administrative charge may contain additional claims. However, that charge is not pleaded or referenced in the Complaint and thus, the Court will not consider it here. Even if the Court were to consider it, the claims in the Complaint identified in this section are not contained within FSIS-2017-00264. Accordingly, they would still be subject to dismissal.

with little or no long-term impact are not disabilities."). As such, Plaintiff has not sufficiently pleaded a disability and his disability-related claims are dismissed.

VI. **Plaintiff's Retaliation Claims Fail Because He Cannot Draw a Causal Connection Between His Protected Activities and the Alleged Conduct**

Title VII prohibits retaliation in employment by making "it an unlawful employment practice for an employer to discriminate against its employees for opposing any unlawful employment practice." *Blomker v. Jewell*, 831 F.3d 1051, 1059 (8th Cir. 2016) (citing 42 U.S.C. § 2000e-3(a)). To establish a retaliation claim, an employee must show that "(1) she engaged in protected conduct; (2) she suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected conduct." *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013) (citing *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1021 (8th Cir. 2011)). The employee must also plausibly allege that "retaliation [was] the 'but for' cause of the adverse employment action." *Id.* (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 351-52 (2013)). It is "not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 819 (8th Cir. 2017) (quoting *Blomker*, 831 F.3d at 1059) (internal quotation marks omitted).

In *Blomker v. Jewell*, the plaintiff, an employee of the United States Department of the Interior, sued the defendant, the Secretary of the United States Department of the Interior, alleging retaliation for reporting discrimination. 831 F.3d at 1055. The plaintiff specifically alleged that, in retaliation for filing EEO complaints, the defendant's other employees criticized her performance and attendance, kept her out of the loop on office news and events, avoided talking with her, discussed her complaints, performed her job for her, antagonized her, did not give her a raise or provide her with training, and suspended and ultimately terminated her. *Id.* The defendant filed a motion to dismiss arguing, among other things, that the plaintiff failed to state a claim for retaliation because she did not plausibly allege that any of the defendant's actions were due to her EEO complaints. *Id*. The district court agreed, finding that the defendant's actions ostensibly related to an argument between the plaintiff and her supervisor and other insubordinate behavior, and it dismissed the plaintiff's retaliation claim. *Blomker v. Jewell*, No. 14-174 (JRT/TNL), 2015 WL 853617, at *7-8 (D. Minn. Feb. 26, 2015). On appeal, the Eighth Circuit affirmed, noting that the defendant apparently acted due to the plaintiff's "inappropriate conduct and failure to follow a

supervisory directive," and the plaintiff did not plausibly allege that her EEO complaints were a "but-for cause of the alleged adverse action" by the defendant. *Blomker*, 831 F.3d at 1059-60.

Here, Plaintiff believes that FSIS's actions were due at least in part to his EEO activity when FSIS allegedly (1) threatened to deny him medical leave on March 10, 2017, (2) questioned the validity of his doctor's note on April 20, 2017, (3) questioned his request for "sick leave" on July 27, 2017, (4) gave him a "Fully Successful" rating on his annual performance review on October 30, 2017, (5) yelled at him for submitting a request for medical leave on October 30, 2017, or October 31, 2017, (6) charged him AWOL on November 2, 2017, (7) threatened to deny his request for medical leave on November 2, 2017, (8) denied his requests for annual leave on May 11, 2018, and June 29, 2018, (9) denied his request for medical leave on July 24, 2018, only to later approve the request on July 31, 2018, and (10) issued him a proposed fourteen-day suspension on May 23, 2018, for being AWOL. But he does not allege that any of his supervisors mentioned his EEO activity, that he was denied leave due to his EEO activity, or that FSIS's stated reason for any other alleged action was his EEO activity.

In this case, like in *Blomker*, "Plaintiff's subjective belief that the events are connected is insufficient to plead the causal connection necessary to state a claim for which relief can be granted." 2015 WL 853617, at *8; *see also Beckley v. St. Luke's Episcopal-Presbyterian Hosps.*, 923 F.3d 1157, 1161 (8th Cir. 2019) (finding that the plaintiff's "unpersuasive argument of temporal proximity combined with her subjective belief that she was being treated differently" did not support her claim for retaliation). Further, timing is rarely, if ever by itself, enough to support a retaliation claim. *Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002). Without plausibly alleging that unlawful retaliation was the reason for FSIS's actions, Plaintiff fails to state a viable retaliation claim. Therefore, all retaliation claims by Plaintiff are dismissed.

**VII. Plaintiff's Claims Fail to the Extent That he Bases Them on Non-adverse Employment Actions**

To state viable claims for relief for discrimination, retaliation, disparate treatment, and hostile work environment, Plaintiff must allege that he suffered an adverse employment action. *See Meredith v. Shulkin*, 709 Fed. App'x 392, 393 (8th Cir. 2017) (stating that race discrimination claims and retaliation claims require showing an adverse employment action); *Gilooly v. Mo. Dep't of Health & Sr. Servs.*, 421 F.3d 734, 738-39 (8th Cir. 2005) (stating that disparate treatment claims require showing that an employee "suffered an adverse employment action"); *Willis v. Henderson*,

9

262 F.3d 801, 808 (8th Cir. 2001) (stating that hostile work environment claims require proof that the harassment suffered by an employee "affected a term, condition, or privilege of employment"). "[A]dverse employment action means 'termination, demotion, transfers involving changes in pay or working conditions, and negative evaluations used as the basis for other employment actions.'" *Jackson v. Lew*, 242 F. Supp. 3d 850, 864-65 (W.D. Mo. 2017) (quoting *Huynh v. United States DOT*, 794 F.3d 952, 958 (8th Cir. 2015)). "The Eighth Circuit has repeatedly defined an adverse employment action to be 'a tangible change in working conditions that produces a material employment disadvantage [which can include] changes that affect an employee's future career prospects.'" *Id.* at 865 (quoting *Wagner v. Campbell*, 779 F.3d 761, 766 (8th Cir. 2015)). Key to the determination is not whether the conduct makes an employee unhappy or is a minor or unpalatable change, but rather "whether a reasonable employee would have found the employer's action to be materially adverse." *Id.*

Here, Plaintiff claims that he suffered materially adverse employment actions when FSIS allegedly (1) denied and subsequently approved his request for medical leave on March 10, 2017, (2) questioned him about a doctor's note on April 20, 2017, (3) questioned him about medical leave on July 27, 2017, (4) issued him a lower-than-wanted performance rating on October 30, 2017, (5) yelled at him on October 30 or October 31, 2017,[7] (6) threatened to deny his request for medical leave on November 2, 2017, (7) charged him AWOL (without any indication that he was so charged) on November 2, 2017, and (8) denied his request for medical leave on July 24, 2018, only to later approve his request on July 31, 2018. (Doc. 3-1 at pp. 10-11, 23-37.) These acts are not adverse employment actions because, though they might have been unwanted, they did not materially change the terms of Plaintiff's employment. *See, e.g.*, *Jackson v. United Parcel Serv., Inc.*, 548 F.3d 1137, 1141-42 (8th Cir. 2008) (finding that an employee's three-month disqualification from her position as a driver, which violated the employer's own disqualification policy, was not an adverse employment action where the employer "recognized its mistake, took

---

[7] Even if Plaintiff connected this incident to his protected classes, which he has not, it is not the type of severe or pervasive harassment necessary to support a claim for hostile work environment. *See, e.g.*, *Woolery v. I.R.S.*, No. 07-0482-CV-W-ODS, 2009 WL 3754224, at *2 (W.D. Mo. Nov. 6, 2009) (finding that the conduct alleged was not sufficiently severe or pervasive where the plaintiff alleged that her manager "used an aggressive tone" with her, "falsely accused her of yelling at a coworker, improperly denied her requests for leave on three occasions, and intentionally attempted to exclude her from a birthday celebration").

10

corrective action, and reinstated" the employee with "full back pay and no loss of seniority or any other employment benefit"); *Stubbs v. Ford Motor Co.*, No. 05-0923-CV-W-FJG, 2008 WL 926404, at *7-8 (W.D. Mo. Mar. 31, 2008) (stating that minor inconveniences that do not affect an employee's future career prospects are not adverse employment actions) (citing *Spears v. Mo. Dep't of Corrs.*, 210 F.3d 850, 853 (8th Cir. 2000)); *Burch v. Henderson*, No. 97-1095-CV-W-6, 2000 WL 97184, at *5 (W.D. Mo. Jan. 27, 2000) (noting that, without more, a "negative performance evaluation" is not an adverse employment action) (citing *Cossette v. Minn. Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999)). To the extent Plaintiff's claims rely on these actions, which are not adverse employment actions under federal law, Plaintiff fails to state viable claims for relief.

## VIII. Plaintiff's Hostile Work Environment Claims Fail Because He Does Not Allege Severe, Pervasive, or Objectively Offensive Harassment

According to the Eighth Circuit, claims for hostile work environments require the following elements:

> (1) the plaintiff belongs to a protected group; (2) the plaintiff was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the plaintiff's protected group status; and (4) the harassment affected a term, condition, or privilege of employment. In addition, for claims of harassment by non-supervisory personnel, [the plaintiff] must show that [her] employer knew or should have known of the harassment and failed to take proper action.

*Jackson*, 242 F. Supp. 3d at 866 (quoting *EEOC v. CRST Van Expedited, Inc.*, 679 F.3d 657, 683 (8th Cir. 2012)). The harassment standard for a hostile work environment claim is "demanding." *Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 979 (8th Cir. 2006). Teasing, offhand comments, and isolated incidents will not do. *Id.* (quoting *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005)). Instead, harassment is sufficient to meet this demanding standard when there is "discriminatory intimidation, ridicule, and insult" so "severe or pervasive" that it alters work conditions and creates an abusive environment. *Pye*, 641 F.3d at 1018. Evaluating a hostile work environment requires looking at several factors, including the "frequency and severity" of the harassment, whether the harassment "was physically threatening or humiliating," and whether the harassment "unreasonably interfered with the employee's work performance." *Blomker*, 831 F.3d at 1057 (quoting *Alvarez v. Des Moines Bolt Supply, Inc.*, 626 F.3d 410, 420 (8th Cir. 2010)) (citations and internal quotation marks omitted).

Here, Plaintiff claims that he was harassed when his first-line supervisor (1) threatened to deny his request for medical leave twice, (2) questioned the validity of his doctor's note but later accepted the doctor's note, (3) questioned his request for sick leave but later approved the request, and (4) yelled at him for requesting medical leave. (Doc. 3 at §§ IV.A, IV.E; Doc. 3-1 at pp. 23-24, 27-29, 37). Even if Plaintiff alleged a connection between these incidents and a protected class, which he has not, Plaintiff does not allege any facts showing the type of extreme workplace conduct necessary to constitute a hostile work environment. *See, e.g.*, *Edwards v. PAR Elec. Contractors, Inc.*, No. 19-00126-CV-W-BP, 2019 WL 2745743, at *7 (W.D. Mo. July 1, 2019) (granting a union's motion to dismiss a member's hostile work environment claim under Title VII where the member relied exclusively on a "cursory allegation" of union-sanctioned race discrimination); *Pittman v. ABB, Inc.*, No. 16-01272-CV-C-WJE, 2017 WL 8792696, at *3-4 (W.D. Mo. Dec. 15, 2017) (granting an employer's motion to dismiss an employee's hostile work environment claim where the employee's "claim that he was called 'Bubba' does not suggest either that the single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered" his working conditions); *Eccles v. Dep't of Elementary & Secondary Educ. for Mo.*, No. 06-0165-CV-W-FJG, 2006 WL 2788516, at *1-2 (W.D. Mo. Sept. 26, 2006) (granting an employer's motion to dismiss an employee's hostile work environment claim under Title VII where the employer's conduct was "rude, unkind and insensitive" but a "reasonably objective person would not find these types of actions to be hostile or abusive").

Because Plaintiff alleges only five relatively benign incidents over a nine-month period, the alleged conduct is not severe or pervasive enough to constitute a hostile work environment. Accordingly, Plaintiff's hostile work environment claim is dismissed.

### IX. Plaintiff's Disparate Treatment Claims Fail Because There are Obvious Alternative Explanations for the Alleged Conduct

Lawful, obvious alternative explanations for allegedly discriminatory conduct can render an employment discrimination claim implausible. *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 373-74 (8th Cir. 2017) (citing *Blomker*, 831 F.3d at 1060-61). In *Blomker*, for example, a detailed attachment to the plaintiff's complaint showed that the defendant ended the plaintiff's employment due to the plaintiff's long disciplinary history, not unlawful discrimination. *Blomker*, 831 F.3d at 1060-61.

Here, Plaintiff's discrimination claims are implausible because there are obvious alternative explanations for the alleged conduct referenced by and incorporated into his Complaint. Specifically, Plaintiff alleges that FSIS discriminated against him based on his race by (1) denying his request for medical leave to cover for him being ten minutes late to work, (2) giving him a "Fully Successful" rating on his annual performance review, and (3) charging him AWOL instead of granting him LWOP. (Doc. 3-1 at pp. 23-29, 35-37.) He also alleges that FSIS discriminated against him based on his religion by denying his request for annual leave to attend a religious event. (Doc. 3-1 at pp. 8, 10-11, 16-17). However, there are no well-pled allegations connecting any of these incidents to Plaintiff's race or religion. Moreover, there are lawful, non-discriminatory explanations for these incidents that are detailed in the documents attached to Plaintiff's Complaint. (Doc. 3-1.)

Specifically, FSIS denied Plaintiff's request for medical leave on October 4, 2017, because Plaintiff was requesting medical leave for a non-medical reason (*i.e.*, tardiness) and he had depleted his annual leave. (Doc. 3-1 at p. 36.) FSIS rated Plaintiff's performance as "Fully Successful" on October 30, 2017, because Plaintiff was "doing his job," and he received the same rating as comparative co-workers outside his race. (Doc. 3-1 at pp. 26, 36.) FSIS did not receive a request from Plaintiff for LWOP on November 2, 2017, nor did it charge him AWOL on that date. (Doc. 3-1 at p. 36.) FSIS denied Plaintiff's request for annual leave to attend a religious event on June 29, 2018, because Plaintiff made the request with very short notice—only the day before, on June 28, 2018—and FSIS could not find coverage for Plaintiff's shift. (Doc. 3-1 at pp. 16-17.)

These detailed, lawful explanations for FSIS's actions are attached to and referenced by Plaintiff's Complaint, rendering Plaintiff's disparate treatment claims implausible. Accordingly, Plaintiff's disparate treatment claims are dismissed.

## X. Plaintiff's Claim the Investigation Into His Administrative Charges was Unfair or Biased Fails Because the Nature and Extent of an EEO Investigation is Within the Agency's Discretion and this Court's de Novo Review of Plaintiff's Claims is an Adequate Remedy

Finally, Plaintiff claims that Defendants engaged in an "[u]nfair or biased EEO investigations" in that Defendants did not "interview all of [Plaintiff's] witnesses or was one sided." (Doc. 3 at § IV.E.) "[A]s a general rule, the nature and extent of an EEOC investigation

13

into a discrimination claim is a matter within the discretion of that agency." *E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 674 (8th Cir. 2012) (internal quotation marks omitted); *see also E.E.O.C. v. Tepro, Inc.*, 38 F. Supp. 3d 883, 889 (E.D. Tenn. 2014) ("judicial review is limited and narrow, as a court may not 'inquire into the sufficiency of the Commission's investigation,' 'because the nature and extent of an EEOC investigation into a discrimination claim is a matter within the discretion of that agency.'" (quoting *E.E.O.C. v. Keco Indus., Inc.*, 748 F.2d 1097, 1100 (6th Cir. 1984)). Moreover, this claim fails because judicial review is an adequate remedy for imperfect EEO processing and, therefore, Plaintiff cannot challenge Defendant's EEO investigation under the APA. *Harrigan v. Yang*, 168 F.Supp.3d 25, 35-36 (D.D.C. 2016) (stating that judicial review is an adequate remedy for errors in EEO processing). Accordingly, Plaintiff's claim that the investigation of his charges was inadequate is dismissed.

## Conclusion

After careful consideration of the record, the Court finds that Plaintiff's allegations, construed liberally and accepted as true, fail to show he is entitled to relief. Plaintiff's complaint and the attached charges do not contain sufficient factual matter, accepted as true, to "'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Accordingly, Defendant's motion to dismiss is **GRANTED** and the case is **DISMISSED**.
**IT IS SO ORDERED.**

                                                s/ Roseann A. Ketchmark
                                                ROSEANN A. KETCHMARK, JUDGE
                                                UNITED STATES DISTRICT COURT

DATED: February 1, 2021